Filed 4/21/16  P. v. Hernandez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO ROMERO HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B261357<br>(Super. Ct. No. 2013039580)<br>(Ventura County) |

Francisco Romero Hernandez appeals from the judgment entered after a jury convicted him of two counts of forcible lewd act upon a child under the age of 14 years (counts 1 and 4 - Pen. Code, § 288, subd. (b)(1));[1] two counts of sexual penetration of a child 10 years of age or younger (counts 2 and 5 - § 288.7, subd. (b)); and two counts of sodomy with a child 10 years of age or younger (counts 3 and 6 - § 288.7, subd. (a)). Appellant was sentenced to prison for an aggregate term of 70 years to life: the upper term of 10 years on count 1, a consecutive full upper term of 10 years on count 4, and two consecutive indeterminate terms of 25 years to life on counts 3 and 6.  On each of counts 2 and 5, appellant was sentenced to a concurrent term of 15 years to life.

Appellant contends that section 654 prohibits punishment for the lewd act offenses in counts 1 and 4 because these offenses are based on the same sex acts

---

[1] All statutory references are to the Penal Code unless otherwise stated.

underlying the offenses in the other counts. Appellant also contends that his 70-year-to-life sentence constitutes cruel and/or unusual punishment in violation of the United States and California constitutions. We affirm.

*Facts*

Alma B. started dating appellant in 2008. In 2012 appellant moved into her apartment. He lived there with Alma B. and her daughter, L.D. During summer vacation in 2013 when L.D. was eight years old, appellant pulled her pants down and put his penis into her anus. She told him to stop because it hurt. Appellant "just started humping [her]." Appellant "kept on touching [her] stomach and pinching it." He was "grabbing [her] very, very hard" and "pulled [her] close to him." Appellant put his finger inside her vagina.

On Thanksgiving Day in November 2013, appellant's son and his girlfriend, Gabby, moved into Alma B.'s apartment. During the night of December 18, 2013, Gabby gave birth to a child. Alma B. spent the night with Gabby. After Alma B. had left to go to the hospital, appellant pulled down L.D.'s pants and twice put his penis into her anus. He did it "hard." He also penetrated her anus with his finger. He "kept on touching [her] boob." He pinched and punched it. When L.D. went to the bathroom, she started bleeding "[f]rom the butt."

There were additional incidents of sexual contact between appellant and L.D.. From the summer of 2013 through the end of the year, appellant sodomized L.D. "[m]ore than five times." Appellant threatened to hit her if she told her mother about what he was doing.

On December 29, 2013, Regina D'Aquilla, a sexual-assault nurse examiner, examined L.D.. She saw lacerations in the vaginal area and above her anus. Her "buttocks area" was "surround[ed]" by blood. L.D. told D'Aquilla that "she had been bleeding on and off since this had happened to her."

2

*Prosecutor's Argument*

During closing argument, the prosecutor told the jury: "[T]he charges are: Count 1, forcible lewd act; Count 2, sexual penetration . . . ; Count 3, sodomy . . . ; [Count] 4, forcible lewd act; [Count] 5, sexual penetration . . . ; and [Count] 6, sodomy . . . ." The prosecutor stated that counts 1 through 3 pertain to the first incident, which occurred during summer vacation. Counts 4 through 6 pertain to the second incident, which occurred when Alma B. was at the hospital with Gabby.

The prosecutor said that the forcible lewd act offense in count 1 was based on appellant's pinching L.D. and grabbing her and pulling "her to him before penetrating [her]." The forcible lewd act offense in count 4 was based on appellant's conduct "before penetrating her anus." The prosecutor explained: "[L]et's take the night of Gabby [count 4]. . . . [L.D.] was grabbed. She was pulled, et cetera. At the moment he set his hands on her with the intent to sexually molest her, there is the 288(b) . . . ."

*Section 654*

Appellant contends: "[T]he record supports a finding that the lewd acts comprising Counts 1 and 4 are one and the same as the sex acts comprising counts 2, 3, 5, and 6. For this reason, when appellant was punished fully and consecutively to two, ten-year terms for Counts 1 and 4, it was a violation of Penal Code section 654 . . . ."

Section 654, subdivision (a) provides that "an act or omission" shall not "be punished under more than one provision." "We apply a substantial evidence standard of review when determining whether section 654 applies." (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

"[S]ection 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*People v. Harrison* (1989) 48 Cal.3d 321, 325.) "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly

3

separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. [Citation.]" (*People v. Perez* (1979) 23 Cal.3d 545, 552.)

"Where a defendant fondles a portion of the victim's body with the requisite intent, a violation of section 288 [lewd act] has occurred. The offense ends when the defendant ceases to fondle that area. Where a defendant fondles one area of the victim's body and then moves on to fondle a different area [or to commit an act of sodomy or sexual penetration], one offense has ceased and another has begun. There is no requirement that the two be separated by a hiatus, or period of reflection. [¶] . . . It cannot reasonably be doubted that, when fondling of an underage victim moves from one area of the body to another, a separate outrage has occurred." (*People v. Jimenez* (2002) 99 Cal.App.4th 450, 456.)

Section 654 was not violated. Substantial evidence supports the trial court's implied finding that the lewd acts underlying counts 1 and 4 were separate from the acts of sodomy and sexual penetration underlying the other counts. As to count 1, the evidence shows that appellant "kept on touching [L.D.'s] stomach and pinching it." He was "grabbing [her] very, very hard" and "pulled [her] close to him." As to count 4, the evidence shows that appellant pinched and punched her "boob."

In closing argument, the prosecutor distinguished the acts underlying counts 1 and 4 from the acts of sodomy and sexual penetration underlying the other counts. We therefore reject appellant's argument that his convictions on counts 1 and 4 "could have been based upon the same conduct which formed the basis of the guilty verdicts in Counts 2, 3, 5, and 6."

*Cruel and/or Unusual Punishment*

When he was sentenced, appellant was 41 years old. Appellant contends that his aggregate sentence of 70 years to life "equate[s] to a life term without possibility of parole" and therefore constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution and article 1, section 17 of the California Constitution. "Under the Eighth Amendment of the United States Constitution, 'the

4

courts examine whether a punishment is grossly disproportionate to the crime.' [Citation.] 'Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Johnson* (2013) 221 Cal.App.4th 623, 636.)

"Appellant forfeited the cruel and unusual punishment issue by not asserting it in the trial court. [Citation.] In any event, appellant's sentence is not disproportionate to his crime[s]. '*Harmelin v. Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], . . . upheld a sentence of LWOP [life without the possibility of parole] for possession of 672 grams of cocaine, a serious crime, but less heinous than' the crimes committed by appellant. [Citation.]" (*People v. Johnson*, *supra*, 221 Cal.App.4th at p. 636.)

The probation report stated: "[Appellant's] abuse had a great impact on the victim and her life. As a result of [appellant's] actions, the victim continues to have nightmares and wakes up scared in the middle of the night. . . . After the crime was reported to the police, the victim continued to suffer from bleeding from her rectum for approximately one month. Additionally, she complained of pain to her vagina for quite some time afterwards. . . . The victim is fearful that [appellant] will be released to hurt her or someone in the family." "[Appellant] demonstrated no remorse for his actions. . . . He absolutely poses a serious threat to society and any child who may be part of his life."

The trial court noted that "the victim . . . was particularly vulnerable and innocent" and that appellant's "crimes . . . involved great violence . . . and bodily harm . . . and psychological harm of a sexual nature of a very small child." "He took advantage of the position of trust of this young girl because he had been in her life for . . . four or more years . . . . In fact, she . . . treated him as if he was . . . her father, . . . [or] at least a father figure." The court considered appellant to be "a serious danger to society."

5

*Abstract of Judgment*

The Abstract of Judgment contains two errors. In section 1 of the determinate sentence abstract, the clerk omitted to check the box under "CONSECUTIVE FULL TERM" for the 10-year consecutive sentence imposed on count 4. In the indeterminate sentence abstract, the clerk indicated in section 5 that appellant had been sentenced to "LIFE WITH THE POSSIBILITY OF PAROLE on counts 2,3,5,6." The clerk should have left section 5 blank. The clerk correctly indicated in section 6.a. that appellant had been sentenced to "15 years to Life on counts 2,5" and in section 6.b. that he had been sentenced to "25 years to Life on counts 3,6."

*Disposition*

The judgment is affirmed. The trial court is directed to correct the Abstract of Judgment as set forth above and to send a certified copy of the corrected Abstract of Judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

6

Jeffrey Bennett, Judge

Superior Court County of Ventura

_____

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret D. Harris, Supervising Deputy Attorney General, Eric E. Reynolds, Deputy Attorney General, for Plaintiff and Respondent.